OPINION OF THE COURT
Herbert Kramer, J.
Defendants New York Times Building, LLC, the New York Times Building Condominium (collectively, NYT), Turner Construction Company and Amec Construction Management, Inc. (collectively, defendants)[1] move, pursuant to CPLR 3212, for summary judgment dismissing plaintiffs’ complaint. Plaintiffs John Huether (plaintiff) and Dawn Huether (collectively, plaintiffs) cross-move for partial summary judgment *636 against NYT, Turner, and Amec under their Labor Law § 241 (6) and § 200 causes of action.
Background Facts and Procedural History
On October 21, 2006, plaintiff sustained various injuries while unloading building supplies during the construction of the New York Times Building located on Eighth Avenue between 40th and 41st Streets in Manhattan. At the time of the accident, plaintiff was employed as a carpenter by nonparty Jacobson and Company. Jacobson had previously been hired to perform work on the project by Turner, which shared general contracting duties with Amec. In this regard, both Turner and Amec were hired by the building owner, NYT, with Amec responsible for building the exterior superstructure of the building and Turner responsible for “fitting out” the interior of the building once the outer structure was in place.
On the morning of the accident, plaintiff and two Jacobson coworkers, Joe Dickey and Sheldon Gravesande, were directed by their foreman, Robert Russolese, to unload building materials from a flatbed truck operated by defendant Kamco Supply Corp. Accordingly, plaintiff and his coworkers proceeded to a loading dock area on the job site where deliveries were received and began unloading materials from the truck which included some 950 pieces of drywall, 10 bundles of metal studs, and several bundles of insulation. Although the bed of the truck was level with the loading dock, there was an 8-to-10-inch gap between the edge of the flatbed and the loading dock due to the presence of a metal frame on the back of the truck which made it impossible to back up the truck until it was flush with the loading dock.[2]
While unloading the metal studs and insulation, the workers merely stepped over the gap between the truck bed and loading dock. However, when the time came to unload the drywall, it was necessary to bridge the gap since the drywall was unloaded using a four-wheeled A-frame dolly. Specifically, the workers placed 16 to 18 pieces of drywall onto the dolly and then rolled it off the back of the truck onto the loading dock. Accordingly, the workers placed a heavy steel plate measuring approximately 24 inches by 36 inches over the gap and began removing the drywall from the truck using the dolly. It is undisputed that the *637 plate was not secured to the truck or the loading dock. Instead, the plate was held in place only by its own weight.
The accident occurred after approximately two thirds of the drywall had been unloaded from the truck. In particular, as plaintiff and two coworkers attempted to push the dolly over the metal plate onto the loading dock, the front wheels of the dolly struck the plate and caused it move and fall into the gap. As a result, the two front wheels went into the gap and the dolly tipped to the side. After briefly attempting to hold the dolly upright, plaintiff jumped out of the way onto the loading dock. However, the dolly and its load of drywall, which weighed an estimated 1,000 pounds, collapsed on top of plaintiff and crushed his right leg. According to Mr. Russolese’s sworn affidavit, following the accident, Jacobson supplied its own plate for unloading operations which was fitted with angle irons to prevent the plate from slipping. However, the driver of the Kamco truck, Joseph Jupiter, testified that following the accident, Jacobson workers secured the plate by nailing it to the wooden floor of the flatbed truck in order to prevent the plate from moving.
By summons and complaint dated November 13, 2006, plaintiffs commenced the instant action against defendants and Kamco alleging violations of Labor Law § 240 (1), § 241 (6) and § 200, as well as common-law negligence. In addition, plaintiffs wife, Dawn Huether, asserted a derivative claim against defendants. In subsequent bills of particulars, plaintiffs alleged violations of 12 NYCRR 23-1.22, 23-1.2, 23-1.3 and 23-1.5 in support of their Labor Law § 241 (6) claim.
On August 25, 2008, plaintiffs filed a note of issue. Thereafter, defendants moved to strike the note of issue so as to allow them the opportunity to depose plaintiffs nonparty coworkers who witnessed the accident. While that motion was pending, on or about October 27, 2008, defendants made the instant summary judgment motion seeking dismissal of plaintiffs’ complaint. On November 17, 2008, defendants’ motion to strike the note of issue was heard by Justice Balter in the Central Compliance Part. After hearing oral arguments, Justice Balter issued a short form order which denied defendants’ motion to strike the note of issue but granted their motion for open commissions to conduct the nonparty depositions of plaintiff’s coworkers. *638 Justice Balter further denied defendants’ motion to extend the time to serve dispositive motions.[3]
On November 14, 2008, plaintiffs served a supplemental bill of particulars in which they alleged a violation of 12 NYCRR 23-1.7 (b) (1) in support of their Labor Law § 241 (6) claim. On November 21, 2008, plaintiffs cross-moved for partial summary judgment against defendants under their Labor Law § 241 (6) and § 200 causes of action. In moving for summary judgment under Labor Law § 241 (6), plaintiffs relied upon alleged violations of 12 NYCRR 23-1.22 (b) (1), (3) and 23-1.7 (b) (1) (i). Thereafter, defendants made a cross motion which (again) sought dismissal of plaintiffs’ Labor Law § 241 (6) claim. In this regard, the cross motion addressed plaintiffs’ reliance upon a violation of section 23-1.7 (b) (1) (i), which had not been alleged at the time defendants originally moved for summary judgment.[3]
[4] The instant motions are now before the court.
Plaintiffs’ Labor Law § 240 (1) Claim
Defendants move for summary judgment dismissing plaintiffs’ Labor Law § 240 (1) claim. In so moving, defendants argue that plaintiff’s accident did not involve the type of extraordinary gravity-related risks covered under the statute. In support of this argument, defendants point to the fact that plaintiff neither fell from a height, nor was he struck by a falling object. Instead, plaintiff was injured when a dolly loaded with drywall that was at the same level as him tipped over onto his right leg. According to defendants, this accident falls outside the purview of Labor Law § 240 (1).
Plaintiffs have failed to offer any opposition to that branch of defendants’ motion which seeks dismissal of their Labor Law § 240 (1) claim. Moreover, at oral argument on the motions, plaintiffs’ attorney conceded that the statute is not applicable inasmuch as the accident was not gravity-related for purposes of Labor Law § 240 (1). Accordingly, that branch of defendants’ motion which seeks dismissal of this cause of action is granted.
*639 Timeliness of Plaintiffs’ Cross Motion
Prior to analyzing the merits of plaintiffs’ Labor Law § 241 (6) and § 200 causes of action, the court must first address the issue of whether plaintiffs’ cross motion for summary judgment is timely. In this regard, defendants maintain the plaintiffs’ motion must be denied inasmuch as it was made more than 60 days after the note of issue was filed in violation of rule 13 of the Uniform Civil Term Rules of the Supreme Court, Kings County. Defendants further maintain that plaintiffs have failed to demonstrate good cause for failing to move in a timely manner.
In reply to this argument, plaintiffs argue that the court may consider their cross motion inasmuch as the legal issues involved in said cross motion for summary judgment are identical to issues raised in those branches of defendants’ timely motion which seek dismissal of plaintiffs’ Labor Law § 241 (6) and § 200 claims.
Plaintiffs filed a note of issue on August 26, 2008 and made their cross motion for summary judgment on November 21, 2008, some 87 days later. While it is true that this was beyond the 60-day deadline set forth in rule 13, this court’s individual part rules allow for summary judgment motions to be made within 90 days of the filing of the note of issue. Consequently, plaintiffs’ cross motion for summary judgment is not untimely. In any event, when “the issues raised by [an] untimely motion or cross motion are already properly before the court . . . the nearly identical nature of the grounds may provide the requisite good cause to review the untimely motion or cross motion on the merits” (Grande v Peteroy, 39 AD3d 590, 592 [2007] [citation omitted]). Here, the issues raised in plaintiffs’ cross motion for summary judgment are nearly identical in nature to the issues raised in defendants’ motion to dismiss these claims. Thus, even if plaintiffs’ cross motion was untimely, good cause exists to review the motion on its merits.
Labor Law § 241 (6) Claim
Defendants move for summary judgment dismissing plaintiffs’ Labor Law § 241 (6) claim. At the same time, plaintiffs cross-move for summary judgment against defendants under this cause of action. At issue in these competing motions are three New York State Industrial Code regulations, 12 NYCRR 23-1.22 (b) (1), (3) and 23-1.7 (b) (1) (i). In this regard, defendants maintain that these regulations are inapplicable and therefore, *640 may not serve to support plaintiffs’ Labor Law § 241 (6) cause of action.[5] In contrast, plaintiffs argue that not only are these regulations applicable, but the violation of these provisions caused plaintiffs injuries as a matter of law.
Labor Law § 241 (6) provides, in pertinent part: “All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.”
Labor Law § 241 (6), which was enacted to provide workers engaged in construction, demolition and excavation work with reasonable and adequate safety protections, places a nondelegable duty upon owners, general contractors and their agents to comply with the specific safety rules set forth in the Industrial Code (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-502 [1993]). Accordingly, in order to support a cause of action under Labor Law § 241 (6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of a New York State Industrial Code provision that is applicable given the circumstances of the accident, and sets forth a concrete standard of conduct rather than a mere reiteration of common-law principles (id. at 502; Ares v State of New York, 80 NY2d 959, 960 [1992]; see also Adams v Glass Fab, 212 AD2d 972, 973 [1995]).
12 NYCRR 23-1.7 (b) (1) (i), which pertains to “falling hazards” and “hazardous openings” provides that “[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place by a safety railing constructed and installed in compliance with this Part (rule).” In support of their argument that this regulation is inapplicable, defendants maintain that the 8-to-10-inch gap between the flatbed and the loading dock did not constitute the type of hazardous opening contemplated under the regulation inasmuch as plaintiff did not and could not fall through such a small opening. In opposition to defendants’ argument, plaintiffs contend that this regulation is clearly applicable given the fact that the accident was caused by the failure to fasten the steel plate that covered the gap between the truck and the loading *641 dock. Moreover, plaintiffs note that defendants have failed to produce any evidence which demonstrates that the gap in question was too small for plaintiff to have fallen through.
In interpreting the language of 12 NYCRR 23-1.7 (b) (1) as a whole, the Appellate Division, Second Department, has determined that the regulation is “intended to protect workers from falling through an opening to the floor below and [is] inapplicable where the hole is too small for a worker to fall through” (Alvia v Teman Elec. Contr., 287 AD2d 421, 423 [2001]). Thus, the regulation does not apply to a hole measuring 12 inches by 16 inches (id. at 422). Nor does it apply to a hole in the back of a flatbed truck measuring 12 inches by 12 inches (Rice v Board of Educ. of City of N.Y., 302 AD2d 578 [2003]).
Here, the gap between the truck and the loading dock was no more than 10 inches wide. As set forth in the above-cited Alvia and Rice cases, section 23-1.7 (b) (1) (i) does not apply to holes/ gaps of such narrow dimensions. Moreover, even if it was theoretically possible for plaintiff to have fallen completely through the gap, plaintiffs injuries were not in fact caused by him falling or stepping into the gap after the plate had been displaced. Rather, the accident occurred when the front wheels of the dolly fell into the gap and the dolly tipped over upon plaintiff. Although plaintiff testified at his deposition that his right leg ended up partially in the gap, there is nothing in his testimony which indicates that plaintiff was at risk of falling through the gap. In fact, plaintiff testified that his entire upper body rested upon the loading dock.[6] Under the circumstances, section 23-1.7 (b) (1) (i) may not serve to support plaintiffs’ Labor Law § 241 (6) cause of action.
12 NYCRR 23-1.22 (b) (3), which pertains to “structural runways, ramps and platforms,” states in pertinent part:
“Runways and ramps constructed for the use of wheelbarrows, power buggies, hand carts or hand trucks shall be at least 48 inches in width. Such runways and ramps shall be constructed of planking at least two inches thick full size or metal of equiva *642 lent strength. Such runways and ramps shall be substantially supported and braced to prevent excessive spring or deflection.”
In moving to dismiss plaintiffs’ Labor Law § 241 (6) claim, defendants maintain that section 23-1.22 (b) (3) is inapplicable since the steel plate involved in plaintiffs accident does not constitute the type of structural ramp, runway, and platform contemplated by the regulation. In support of this argument, defendants submit an expert affidavit by certified safety professional Howard I. Edelson. Mr. Edelson states that metal plates such as the one involved in the instant case, which are used to bridge the gap between trucks and loading docks are called “dock plates” by the National Safety Council and portable “dockboards” or “bridge plates” under the Occupational Safety and Health Act (OSHA) regulations. Annexed to Mr. Edelson’s affidavit are copies of the relevant OSHA regulations and a National Safety Council “data sheet” wherein such plates are described and referred to as bridge plates, dock plates, and dock-boards. Under the circumstances, Mr. Edelson concludes that “the structural runways, ramps and platforms described by 23-1.22 does not include the dock plate that was involved in plaintiffs accident.”
In opposition to defendants’ argument, and in support of their own cross motion for summary judgment under Labor Law § 241 (6), plaintiffs maintain that section 23-1.22 (b) (3) is clearly applicable in this case. In particular, plaintiffs submit an expert affidavit by certified site safety manager Kathleen Hopkins in which she maintains that the metal plate covering the gap between the truck and loading dock was not properly braced to prevent deflection as required by the regulation, and that this failure caused the accident. Plaintiffs also argue that the fact that OSHA or National Safety Council documents or regulations refer to such bridging devices as dock plates or bridge plates is irrelevant with respect to the question of whether the plate qualifies as a runway or ramp under the Industrial Code. Finally, plaintiffs argue that the court should disregard Mr. Edelson’s affidavit inasmuch as he states that he relied upon an affidavit by one Richie Amet, which is not part of the record before the court.
In reply to plaintiffs’ arguments, defendants submit a supplemental affidavit by Mr. Edelson in which he avers that “[e]ven without that affidavit [by Richie Amet], the opinions set forth in my initial affidavit remain unchanged.”
*643 As an initial matter, the court finds that Mr. Edelson’s initial reference to the Amet affidavit in his own expert affidavit amounts to a harmless oversight that was corrected by Edelson’s subsequent affidavit. Turning to the merits of the matter, it is clear that section 23-1.22 (b) (3) is sufficiently specific to support a Labor Law § 241 (6) cause of action (see Carriere v Whiting Turner Contr., 299 AD2d 509, 510 [2002]). Moreover, there is no dispute that the plate between the truck and the loading dock was not braced to prevent deflection and the failure to so brace the plate was a direct cause of the accident. In addition, the plate was put in place for use by a dolly or “hand cart” type device identified in the regulation. Accordingly, the only real issue is whether the plate in question constitutes the type of “runway” or “ramp” contemplated by section 23-1.22 (b) (3).
In the court’s view, the plate does constitute such a runway or ramp. In this regard, the fact that OSHA regulations and the National Safety Council data sheet refer to such devices as bridge plates, dock plates or dockboards does not preclude the possibility that the plate constitutes a runway or ramp under the Industrial Code. Indeed, a footnote to the National Safety Council data sheet submitted by defendants indicates that there are some 28 different names commonly used to describe these devices including “running board” and “gangplank.” Furthermore, although the Industrial Code does not define the terms “runway” or “ramp,” given the fact that the regulation contemplates their use by wheelbarrows, hand carts and hand trucks, it is clear that such runways and ramps are used for the type of loading and unloading operations involved in the instant case. Thus, in an analogous situation where a plank was put in place in order to load/unload a truck using a wheelbarrow, recent case law holds that section 23-1.22 (b) (3) is applicable (Dietz v Compass Prop. Mgt. Corp., 49 AD3d 1152 [2008]).[7]
Having determined that 12 NYCRR 23-1.22 (b) (3) is both specific and applicable, the issue of whether plaintiffs are entitled to summary judgment under their Labor Law § 241 (6) claim based upon a violation of this regulation must be addressed. In this regard, the court initially notes that there is a split in Appellate Division authority as to whether it is ever appropriate to award a plaintiff summary judgment on a Labor *644 Law § 241 (6) claim. Specifically, the Third and Fourth Departments hold that such relief is not available since even an admitted violation of the Industrial Code merely constitutes some evidence of negligence (see Mulcaire v Buffalo Structural Steel Constr. Corp., 45 AD3d 1426, 1427-1428 [2007]; Wells v British Am. Dev. Corp., 2 AD3d 1141, 1144 [2003]). In contrast, the First Department and the Second Department (which is controlling here) will award plaintiffs summary judgment on a Labor Law § 241 (6) claim provided there is no dispute that a violation of the Industrial Code caused the accident and the plaintiffs’ own negligence did not play a role in the accident (Kozlowski v Ripin, 60 AD3d 638 [2d Dept 2009]; Catarino v State of New York, 55 AD3d 467 [2008]).
Here, there was a clear violation of section 23-1.22 (b) (3) inasmuch as the plate was not braced against deflection. Moreover, the failure to properly brace the plate directly caused the accident. Finally, defendants have failed to raise an issue of fact as to whether plaintiffs comparative negligence contributed to the accident. In fact, defendants papers do not even raise this argument.
Accordingly, to the extent that they rely upon a violation of section 23-1.22 (b) (3), plaintiffs are entitled to summary judgment against defendants under their Labor Law § 241 (6) cause of action.
12 NYCRR 23-1.22 (b) (1), which also applies to structural runways, ramps and platforms, provides that
“[a]ll runways and ramps shall be substantially constructed and securely braced and supported. Runways and ramps constructed for use by motor trucks or heavier vehicles shall be not less than 12 feet wide for single lane traffic or 24 feet wide for two lane traffic. Such runways and ramps shall be provided with timber curbs not less than 10 inches by 10 inches, full size timber, placed parallel to, and secured to the sides of such runways and ramps. The flooring of such runways and ramps shall be positively secured against movement and constructed of planking at least three inches thick full size or metal of equivalent strength.”
In support of their motion for summary judgment dismissing plaintiffs’ Labor Law § 241 (6) claim, defendants argue that this regulation is inapplicable inasmuch as the steel plate involved in plaintiffs accident did not constitute the type of runway or *645 ramp contemplated by section 23-1.22 (b) (1). In opposition to this argument, and in support of their cross motion for summary judgment under Labor Law § 241 (6), plaintiffs maintain that the steel plate used to unload the truck was a runway or ramp as contemplated by the regulation. Moreover, plaintiffs argue that this regulation was violated inasmuch as the first sentence of the regulation requires that “[a]ll runways and ramps . . . be . . . securely braced” and it is undisputed that the plate was not braced.
Although the first sentence of this regulation refers to “[a]ll runways and ramps,” reading section 23-1.22 (b) (1) in it entirety, and viewing the regulation in the context of the succeeding provisions of section 23-1.22, it is clear that this provision is intended to apply to runways and ramps used by trucks and other heavy vehicles. Clearly, the plate involved in plaintiffs accident did not constitute such a runway or ramp. Rather, as set forth above, the plate involved in the instant action is covered under section 23-1.22 (b) (3). Accordingly, section 23-1.22 (b) (1) is inapplicable in this case and may not serve as a basis for plaintiffs’ Labor Law § 241 (6) cause of action.
Labor Law § 200 and Common-Law Negligence Claims
Defendants move for summary judgment dismissing plaintiffs’ Labor Law § 200 and common-law negligence claims against them, while plaintiffs cross-move for summary judgment against defendants under these causes of action. In support of their motion for summary judgment, defendants maintain that the underlying accident arose out of the means and methods plaintiff and his Jacobson coworkers utilized in unloading the drywall from the back of the flatbed truck. Defendants further argue that they did not exercise any control over these means and methods inasmuch as plaintiffs own deposition testimony indicates that he was supervised solely by a Jacobson foreman, Robert Russolese. Under the circumstances, defendants maintain that there is no basis for the Labor Law § 200 and common-law negligence claims asserted against them.
In opposition to this branch of defendants’ motion, and in support of their own motion for summary judgment under their Labor Law § 200 and common-law negligence claims, plaintiffs submit sworn affidavits by Mr. Dickey and Mr. Gravesande in which they aver that Turner or Amec supplied the steel plate for the specific purpose of unloading supplies from trucks onto the loading dock. Mr. Dickey and Mr. Gravesande further *646 maintain that the plate had no angle irons or brackets which could be used to secure the plate. In addition, Mr. Dickey and Mr. Gravesande allege that Turner and Amec personnel were aware that Jacobson workers unloaded trucks using the unsecured plate and failed to warn them about the safety hazard that this presented. Plaintiffs further point to the deposition testimony of Turner’s site safety officer on the construction project, Ricardo Barahona. In particular, Mr. Barahona testified that steel plates used to bridge the gap between a truck and loading dock are required to be secured and that if he witnessed a subcontractor using such an unsecured plate, he would speak to the supervisor. According to plaintiffs, inasmuch as Turner and/or Amec provided the plate and were aware that subcontractors used it to unload trucks without securing it, Mr. Barahona’s testimony is tantamount to an admission of negligence.
Labor Law § 200 is merely a codification of the common-law duty placed upon owners and contractors to provide employees with a safe place to work (Yong Ju Kim v Herbert Constr. Co., 275 AD2d 709, 712 [2000]). Liability for causes of action sounding in common-law negligence and for violations of Labor Law § 200 is limited to those who exercise control or supervision over the plaintiffs work, or who have actual or constructive notice of an accident-causing unsafe condition (Bradley v Morgan Stanley & Co., Inc., 21 AD3d 866, 868 [2005]; Aranda v Park E. Constr., 4 AD3d 315 [2004]; Akins v Baker, 247 AD2d 562, 563 [1998]). Specifically, “[w]here a premises condition is at issue, property owners [and contractors] may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident” (Ortega v Puccia, 57 AD3d 54, 61 [2008]). On the other hand,
“when a claim arises out of alleged defects or dangers in the methods or materials of the work, recovery against the owner or general contractor cannot be had under Labor Law § 200 unless it is shown that the party to be charged had the authority to supervise or control the performance of the work” (id.).
Absent such authority, no liability attaches even when the owner or general contractor has notice of the unsafe manner in which the work was performed (id.).
Here, the accident arose out of defects and dangers inherent in the methods and materials plaintiff and his coworkers used *647 in off-loading the drywall from the truck. Specifically, plaintiff and his coworkers continuously rolled a dolly loaded down with some 1,000 pounds of drywall over an unsecured steel plate that bridged the gap between the truck and the loading dock. The record is clear that NYT, which owned the building, did not have any authority to direct, control, or supervise this unloading operation. Consequently, there is no basis for plaintiffs’ Labor Law § 200 or common-law negligence claims against NYT.
With respect to Turner and Amec, however, there is evidence that they had some measure of control over methods and materials used to unload the truck. In this regard, Mr. Dickey’s and Mr. Gravesande’s affidavits indicate that Turner or Amec supplied the plate used at the time of the accident for purposes of bridging gaps between the loading dock and delivery trucks. These affidavits also indicate that there was no means of securing the plate inasmuch as it lacked any angle irons or brackets. Thus, by allegedly supplying such a plate, the trier of fact could conclude that the general contractors Turner and Amec, in effect, exercised a degree of control over the unsafe method used to unload the truck.
Furthermore, Mr. Barahona testified at his deposition that under its contract with NYT, Turner had a duty and responsibility to ensure that subcontractors fulfilled their contractual obligations, which included complying with safety requirements. According to Mr. Barahona, if he observed Jacobson or any other subcontractor hired by Turner engage in unsafe work practices, he would speak to the supervisor in order to remedy the situation. In addition, there is evidence that Turner had actual and constructive notice that Jacobson unloaded its delivery trucks using the unsecured plate. Thus, issues of fact exist regarding whether Turner had the authority to control the unsafe manner of unloading work, of which it was aware.
Accordingly, that branch of defendants’ motion which seeks summary judgment dismissing plaintiffs’ Labor Law § 200 and common-law negligence claims against Turner and Amec is denied.
Although there are issues of fact regarding Turner’s and Amec’s liability under plaintiffs’ Labor Law § 200 and common-law negligence theories, plaintiffs are not entitled to summary judgment under these causes of action. In this regard, plaintiffs have failed to cite, and the court is unaware of any authority whereby a plaintiff has successfully moved for summary judgment under a Labor Law § 200 cause of action. This is because *648 there are nearly always issues of fact regarding whether a contractor or owner breached its duty under the statute to provide a safe workplace. Here, numerous questions of fact exist which can only be resolved by the jury. For example, it is unclear who supplied the plate. Although Mr. Dickey and Mr. Gravesande testified that the plate was supplied by Turner or Amec, plaintiff did not know who supplied the plate, and Mr. Russolese fails to indicate who supplied the plate in his own affidavit. At the same time, an issue of fact exists regarding whether the plate could have been adequately secured against movement. In particular, although Mr. Dickey’s, Mr. Gravesande’s and Mr. Russolese’s affidavits indicate that there was no way to secure the plate, the driver of Kamco’s truck, Mr. Jupiter, testified that after the accident, Jacobson workers secured the plate by nailing it to the bed of the truck.
Summary
In summary, the court rules as follows: (1) that branch of defendants’ motion which seeks dismissal of plaintiffs’ Labor Law § 240 (1) cause of action is granted; (2) that branch of defendants’ motion which seeks dismissal of plaintiffs’ Labor Law § 241 (6) claim is granted to the extent that plaintiffs rely upon violations of 12 NYCRR 23-1.2, 23-1.3, 23-1.5, 23-1.22 (b) (1) and 23-1.7 (b) (1) (i), but denied to the extent that plaintiffs rely upon a violation of section 23-1.22 (b) (3); (3) that branch of plaintiffs’ cross motion which seeks summary judgment under their Labor Law § 241 (6) claims is granted to the extent that they rely upon a violation of 12 NYCRR 23-1.22 (b) (3); (4) that branch of defendants’ motion which seeks dismissal of plaintiffs’ Labor Law § 200 and common-law negligence claims is granted with respect to NYT but denied with respect to Turner and Amec; and (5) that branch of plaintiffs’ cross motion which seeks summary judgment under their Labor Law § 200 claim is denied.

. The remaining defendant, Kamco Supply Corp., is represented by separate counsel.

. The metal frame ordinarily held a “spider” or forklift-type machine. However, union rules required that the lift machine be removed prior to entering the loading dock area.

. It appears that defendants were, in effect, seeking to withdraw their pending summary judgment motion and refile the motion after having the opportunity to depose the nonparty coworkers. However, such relief was denied by Justice Balter and plaintiffs motion to reargue this motion was also denied.

. It is unclear why defendants felt the need to make a cross motion to address this matter rather than just filing a supplemental affirmation in support of their original summary judgment motion.

. It is clear that the remaining Industrial Code provisions cited in plaintiffs’ bills of particulars — namely 12 NYCRR 23-1.2, 23-1.3, and 23-1.5— are too general to support a Labor Law § 241 (6) claim. Indeed, plaintiffs do not argue otherwise.

. Plaintiffs have submitted an expert affidavit by certified site safety manager Kathleen Hopkins in which she avers that “[pllaintiff was knocked down into the hazardous opening and was only stopped from falling all the way through by his lower body being pinned by the falling dolly cart and sheetrock.” However, a review of plaintiffs deposition testimony fails to support this claim. Furthermore, affidavits by Mr. Dickey and Mr. Gravesande (which were submitted by plaintiffs) indicate that only plaintiffs ankle and foot were wedged in the gap.

. In Dietz, the section 23-1.22 (b) (3) violation was premised upon the insufficient width of the runway/ramp rather than the movement of the device.